UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PEDRO MONTERO-CRUZ,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-3193-MLP

ORDER

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas petition, asserting an immigration judge's ("IJ") September 1, 2026, bond denial was an abuse of discretion and thus a violation of his due process rights. (*See generally* dkt. # 1.) Petitioner seeks release from custody. (*Id.* at 20-21.) Petitioner's counsel filed a declaration in support. (Dkt. # 5 ("Currie Decl.").) Respondents filed a return (dkt. # 7), together with declarations from their counsel, Barbara Andrade (dkt. # 8) ("Andrade Decl.") and U.S. Department of Homeland Security Deportation Officer Andre Ouk (dkt. # 9) ("Ouk Decl."). Petitioner filed a traverse in reply. (Dkt. # 10.)

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States on or about February 24, 1999. (Ouk Decl., ¶ 5.) He was encountered by border patrol and granted voluntary return to Mexico. (*Id.*)

Although the exact date is unclear, Petitioner returned to the United States around 2003 and "has remained continuously in the United States for more than twenty-three years." (Dkt. # 1 at 3.) On April 18, 2007, Petitioner was arrested for DUI by the Washington County Sheriff's Office. (Ouk Decl., ¶ 6.) The case was later dismissed upon completion of a diversion program. (*Id.*)

Officer Ouk asserts that on July 12, 2026, ICE Emergency and Removal Operations ("ERO") "identified Petitioner as a citizen and national of Mexico who was unlawfully present in the U.S." with no "pending or approved immigration applications that would allow him to remain in the [United States]." (Ouk Decl., ¶ 7.) An ERO supervisor issued a warrant for Petitioner's arrest. (*Id.*) The same day, an "ERO arrest team" observed a vehicle associated with Petitioner. (*Id.* ¶ 8.) After the vehicle parked and Petitioner exited the vehicle, ERO agents approached Petitioner and asked for his identification. (*Id.*) Officers then "verified Petitioner's identity from a previously obtained photograph" and placed him under arrest. (*Id.*) He was transferred to the NWIPC. (*Id.*)

ICE served Petitioner with a Notice to Appear ("NTA"), charging him with being inadmissible under the Immigration and Nationality Act ("INA"). (Ouk Decl., ¶ 10.)

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

On August 17, 2026, Petitioner attended an immigration hearing with his attorney and "admitted to the allegations and conceded the charge in the NTA[.]" (Ouk Decl., ¶ 11.) The IJ found Petitioner "removable as charged" and his case was scheduled for another hearing on September 11, 2026, to decide his applications for relief from removal. (*Id.*)

Prior to that scheduled hearing, Petitioner requested a bond hearing with the immigration court. (Ouk Decl., ¶ 12.) In preparation for the bond hearing, Petitioner's counsel filed a bond packet, containing a 14-page motion and evidence supporting the request for bond. (Currie Decl., ¶ 3; *see* dkt. # 6.) The motion provides significant information about Petitioner's life in the United States, including information about his family and children, his residence, his employment, his 2007 DUI conviction, along with the legal authority relevant for immigration bond determinations. (*See* dkt. # 6 at 4-15.) The evidence supporting Petitioner's motion included letters of support (dkt. # 6 at 16-20), bank statements (*id.* at 21-29), and bill statements showing Petitioner's U.S. sponsor's address (*id.* at 30-31). For the hearing, DHS filed a copy of the Form I-213 Record of Deportable/Inadmissible [Noncitizen] from the July 12, 2026 arrest. (Ouk Decl., ¶ 13; *see* Andrade Decl., ¶ 2, Ex. B.)

The immigration court held the bond hearing on September 1, 2026. (Ouk Decl., ¶ 14.) The IJ denied bond, finding Petitioner posed both a risk of danger and flight. The IJ issued her initial order using a checkbox form. (*See* Andrade Decl., ¶ 2, Ex. D.) The box next to "Danger/Flight Risk" is checked. (*Id.* at 2.) Under "Additional information", the box is checked and states, "Conditional release is DENIED under any conditions set by ICE/DHS." (*Id.*) The box indicating the IJ considered Petitioner's ability to pay a bond is also checked. (*Id.* at 3.) The form order contains no additional findings or analysis. It is unclear whether Petitioner appealed the IJ's denial to the Board of Immigration Appeals.

Respondents have provided a transcript of the audio recording of the challenged bond hearing. (Andrade Decl., ¶ 2, Ex. F.)

Petitioner attended the immigration merits hearing on September 11, 2026, at which Petitioner's counsel did not appear. (*Id.* ¶ 17.) The IJ denied Petitioner's application for cancellation of removal. (*Id.*; *see* Andrade Decl., ¶ 2, Ex. E.) Petitioner is currently scheduled to attend a master calendar immigration hearing on October 21, 2026, to decide "whether Petitioner is eligible for voluntary departure." (Ouk Decl., ¶ 17.)

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner asserts that the IJ's decision was "arbitrary, conclusory, reflective of an abuse of discretion, and devoid of any reasoned or individualized analysis and unsupported by the record." (Dkt. # 1 at 1.) According to Petitioner, the IJ's reliance on "a nearly nineteen-year-old DUI matter and concerns regarding the viability of [his] applications for relief while failing to meaningfully address more than twenty-three years of residence, two United States citizen children, stable housing, employment, community support, and the absence of subsequent criminal conduct[]" was an abuse of discretion and a violation of due process. (*Id.* at 2, 7.)

Respondents do not appear to respond to Petitioner's contention that the IJ failed to meaningfully engage with the relevant bond factors, or Petitioner's ties and equities in the United States. (*See generally* dkt. # 7.) In other words, Respondents do not respond to Petitioner's substantive claim. Instead, Respondents assert Petitioner is not entitled to habeas relief because he failed to first exhaust his administrative remedies by appealing the IJ's decision to the Board of Immigration Appeals. (Dkt. # 7 at 2, 5-10.)

**A. The Court Waives Exhaustion**

In cases brought under § 2241, exhaustion is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). The Court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). The party seeking waiver of exhaustion bears the burden to show one of the "*Laing*" factors applies. *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted). Both parties brief the exhaustion requirement but reach opposite conclusions. (Dkt. # 1 at 17-19; dkt. # 7 at 5-10.)

The Court finds that waiving any prudential exhaustion requirement is appropriate, given the length of BIA appeals and the individualized irreparable injury resulting from Petitioner's detention.

Courts in this District have found that the pursuit of administrative remedies in immigration cases such as this one would involve unreasonable delay. *See, e.g.*, *Segura Serrano v. Scott*, 2026 WL 1674357, at *3 (W.D. Wash. June 1, 2026) (noting evidence of the BIA's "unprecedented" caseload after it was reduced in size by nearly one half in early 2025, data from

2024 showing BIA decisions take over six months, and that "data in 2025 indicates that the delay has exponentially worsened.") (cited sources omitted); *W.T.M. v. Bondi*, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026) (noting that data released by the Executive Office for Immigration Review reflecting that the average processing time for bond appeals in 2024 exceeded 200 days and that "[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals."). The Court has no reason to believe Petitioner would not face similar unreasonable delay should he be required to first seek a BIA appeal before pursuing habeas relief in district court.

More importantly, Petitioner has demonstrated he would suffer individualized, irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Petitioner asserts that he is the primary caregiver for his two children, from whom he has now been separated since July 12, 2026. "[S]eparated families . . . are substantial injuries and even irreparable harms." *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017). Accordingly, the Court waives the requirement that Petitioner exhaust a BIA appeal before seeking habeas relief here.

**B. The IJ Abused Her Discretion**

Habeas courts review an IJ's bond determination for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779–80 (9th Cir. 2024). Under an abuse of discretion standard, the court is not permitted to reweigh evidence; it can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)).

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under *In Re Guerra*, 24 I. & N. Dec. 37 (BIA

2006) ("*Guerra*"): (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Martinez*, 124 F.4th at 783 (citing *Guerra*, 24 I. & N. Dec. at 40).

The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 24 I. & N. Dec. at 40. To sustain a permissible flight risk finding, any factor considered by an IJ must rationally bear on a noncitizen's likelihood to appear for immigration proceedings. *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976) (reversing flight risk finding where IJ relied on factors bearing "little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding"). "The *Guerra* factor most pertinent to assessing dangerousness is the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Martinez*, 124 F.4th at 783.

The Court has reviewed the hearing transcript (Andrade Decl., ¶ 2, Ex. F) and provides a summary here: The IJ introduced the case, had the parties make their appearances, and acknowledged the Spanish language interpreter. (*Id.* at 3.) The IJ acknowledged Petitioner's "request" was marked as "Exhibit 1" and the government's evidence was marked as "Exhibit 2."

(*Id.*) The IJ then asked Petitioner's counsel, "[I]s there a habeas?" to which counsel responded "No, [Y]our [H]onor. This is a *Vazquez v. Bostock* bond." (*Id.* at 3-4.)

Petitioner's counsel then presented her argument for bond. (Andrade Decl., ¶ 2, Ex. F at 4.) She asserted that Petitioner has lived in the United States "for more than 23 years" and is the father of two teenage children for whom he is the sole provider. (*Id.*) Counsel reiterated that Petitioner had "a filed application for asylum, withholding of removal, protection under the Convention Against Torture, as well as cancellation of removal." (*Id.*) Petitioner's counsel then discussed Petitioner's sponsor in Tacoma, Washington, with whom Petitioner intended to live, and his employer in Tacoma where he intended to return. (*Id.*) Finally, Petitioner's counsel acknowledged Petitioner's DUI charge from 2007 and emphasized Petitioner has not had any subsequent "arrests, charges, or convictions of any kind." (*Id.*) She concluded that Petitioner is not a danger or a flight risk and requested bond in the amount of five thousand dollars. (*Id.*)

The IJ next asked a series of questions to Petitioner's counsel, first asking whether the mother to Petitioner's children was "a resident or a citizen." (Andrade Decl., ¶ 2, Ex. F at 5.) The IJ next asked if Petitioner had any visa petitions or whether he was "together" with the mother of his children. (*Id.*) The IJ asked whether Petitioner's children are "in good health" or "have any educational issues." (*Id.*)

Next, the DHS attorney argued the following, in full:

> Your honor, the respondent did have a voluntary return in -- back in 1999. As counsel stated, there was a DUI arrest in 2007. However, respondent did not file any reports or court documents from it, so we do not know what the allegations were, or the facts underlying it. Respondent has not applied for any relief from -- since entry. He will be very limited in relief, and he does not have work authorization.

(Andrade Decl., ¶ 2, Ex. F at 6.)

The IJ then asked DHS counsel, "So a potential one year issue?" (*Id.*) Without getting a response, the IJ asked Petitioner's counsel, "He's applying for asylum?" to which Petitioner's counsel reminded the IJ that he had, along with an application for cancellation. (*Id.*) The IJ's last question was whether the children live with their mother, to which Petitioner answered, "Yes." Petitioner's counsel informed the IJ that Petitioner shares joint custody of the children. (*Id.*)

The IJ subsequently denied bond based on Petitioner's criminal history and the viability of Petitioner's applications for relief from removal. Her oral ruling reads, in full:

> Thank you. All right. I do have concerns about the respondent's criminal history and lack of documentation or corroboration about that. I have concerns about the viability of the applications for relief. In this case, I'm going to find the respondent has not met his burden of proof, and I find that he is a danger and a flight risk. I will deny bond, and I will reserve his right to appeal on or before October 1, 2026, or it may be deemed abandoned. All right. Thank you.

Andrade Decl., ¶ 2, Ex. F at 6-7.

This decision was constitutionally deficient for a number of reasons. First, the IJ acknowledged having "concerns" about Petitioner's criminal history, but did not articulate what those concerns were or how they demonstrated a danger or risk of flight. The IJ focused on a "lack of documentation or corroboration about" Petitioner's conviction, but similarly fails to articulate the significance of that information had it been provided. Nor does it appear the IJ considered the "recency" or remoteness of Petitioner's conviction. *See Martinez*, 124 F.4th at 783 (when considering the noncitizen's criminal record as a factor, the IJ must consider "the extensiveness of criminal activity, the *recency* of such activity, and the seriousness of the offenses" (emphasis added) (citing *Guerra*, 24 I. & N. Dec. at 40)); see also *Padilla Paz v. Hernandez*, 833 F. Supp. 3d 1180, 1190 (W.D. Wash. 2026) (finding that IJ abused its discretion where he failed to consider the remoteness of petitioner's criminal conviction from "twelve or

more years ago”). To the extent Petitioner’s 2007 DUI conviction bore any nexus to his risk of flight or danger to the community *today*, that connection was not articulated by the IJ.

As for the second concern noted by the IJ—the “viability” of Petitioner’s applications for relief—it is entirely unclear which applications the IJ considered, why she believed the applications were potentially non-meritorious, and how Petitioner’s purportedly limited immigration relief meant he was a danger of absconding or failing to appear for future immigration proceedings. While the BIA has identified that an IJ may “consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond,” *see Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020), the mere fact of a removal order or the lack of other potential forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano*, 2026 WL 1674357, at *7; *Tavurov v. Noem*, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) (citation omitted).

Here, the IJ ultimately based her denial in part on the viability of Petitioner’s applications for relief, but the transcript shows she asked a single question about a “potential one year issue” with Petitioner’s asylum claim. (Andrade Decl., ¶ 2, Ex. F at 6.) The question went unanswered by the parties and further unexplained by the IJ. (*Id.*) The IJ did not ask any questions about Petitioner’s remaining applications for relief, including his application for withholding of removal, protection under the CAT, or cancellation of removal, despite having been reminded they were pending just moments prior during counsel’s argument. (*Id.*; *see id.* at 4.) So, “[w]hile it might be rational to draw the conclusion ‘that a noncitizen who faces inevitable removal may be less likely to appear at future removal hearings,’ the IJ failed to make that connection to Petitioner’s individual circumstances or otherwise discuss whether the ‘relative strengths or weaknesses of Petitioner’s claims for relief outweighed’ the significant evidence demonstrating

Petitioner's fixed and stable connections to his family and community." *Montiel Moreno v. Hernandez*, 2026 WL 1906522, at *9 (W.D. Wash. June 18, 2026) (quoting *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026). To the extent the IJ considered or found relevant Petitioner's other pending applications for relief, such consideration went unarticulated. *See Miri v. Bondi*, 2026 WL 622302, at *8–9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where an immigration judge did not explain the reasons for denying bond). To the extent the IJ did not, such failure was an abuse of discretion. *See Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (acknowledging that the BIA abuses its discretion "when it fails to consider and address in its entirety the evidence submitted by a petitioner") (citation modified).

In addition, the IJ failed to meaningfully acknowledge, discuss, or engage with Petitioner's evidence tending to support bond. For example, the IJ's question posed to Petitioner's counsel about whether her client applied for asylum—asked, at most, only a few minutes after having been again so informed during counsel's argument—suggests she had not carefully considered the evidence prior to the hearing or listened carefully to counsel's argument. Petitioner's motion and supporting evidence showed Petitioner has significant ties and equities in the United States. He has lived in the United States for over two decades, supports two U.S.-citizen minor aged children, has an established residence and a U.S.-based sponsor, was employed, and supported by multiple members of his community. All of this information was provided to the IJ prior to the hearing, is relevant under numerous *Guerra* factors, and tends to support release or bond. And yet the IJ failed to mention or engage with almost all of Petitioner's evidence, other than vague questions about his children's health and education. In fact, the IJ

does not mention *Guerra* or any the enumerated factors from *Guerra*, at all. (*See generally* Andrade Decl., ¶ 2, Ex. F.)

Petitioner was owed an *individualized* bond determination, *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018), but the IJ provided no rationale or explanation that demonstrates she meaningfully engaged with the relevant evidence from Petitioner's individual circumstances or how it ultimately supported her conclusion that Petitioner posed a danger or risk of flight. It remains entirely unclear what the IJ considered, how it was weighed, how it demonstrated a risk of flight or danger, and how it ultimately outweighed Petitioner's contrary evidence tending to support bond or release. *See Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (finding an IJ abuses their discretion when the district court is "left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors"). In sum, the IJ's seeming failure to acknowledge and consider Petitioner's evidence, together with her failure to provide a reasoned explanation for her findings, was an abuse of discretion that entitles Petitioner to habeas relief under due process.

Federal courts have a "fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Courts have found no basis for similarly situated petitioners to continue to be detained. *See Valdez-Reyes v. Scott*, 2026 WL 1361635, at *4 (W.D. Wash. May 15, 2026) (ordering immediate release); *Soriano*, 830 F. Supp. 3d at 1081-82 (same); *Vasquez Lopez*, 830 F. Supp. 3d at 1103 (same); *W.T.M.*, 2026 WL 262583, at *5 (same). The Court finds the same here and thus the appropriate remedy is for Petitioner's immediate release with reasonable conditions of supervision.

## IV. CONCLUSION

Based on the foregoing, the Court hereby **ORDERS** as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is **GRANTED** in part.

(2) Respondents shall RELEASE Petitioner from custody within **twenty-four (24) hours** of the issuance of this Order with reasonable conditions of supervision.

(3) Respondents shall file a notice with the Court confirming Petitioner's release within **forty-eight (48) hours**.

(4) Petitioner's request for the Court to retain jurisdiction is **DENIED**.

(5) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The Court encourages the parties to meet and confer prior to the filing of any such motion.

Dated this 13th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge